■ CATHERINE FRITZ et al., Respondents, v WHITE CONSOLI-DATED INDUSTRIES, INC., Appellant. (Appeal No. 3.) [762 NYS2d 711] —Appeal from a judgment of Supreme Court, Oneida County (Siegel, J.), entered June 14, 2002, upon a jury verdict rendered in favor of plaintiffs.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously reversed on the law without costs, the motion is granted and a new trial is granted.

Memorandum: Plaintiffs commenced this action to recover for property damage arising from a fire that occurred on November 18, 1991. The fire allegedly started in a dehumidi-fier manufactured by defendant. Although four causes of action were asserted in the complaint, only the causes of action for strict products liability and breach of implied warranty were submitted to the jury, and Supreme Court properly instructed the jury with respect to those causes of action. With respect to the strict products liability cause of action, the jury rendered a verdict finding, inter alia, that the dehumidifier was defective when it left defendant's control and finding plaintiff Catherine Fritz 40% at fault and defendant 60% at fault for plaintiffs' property damage. With respect to the breach of implied war-ranty cause of action, the jury rendered a verdict in favor of defendant, finding that the dehumidifier was fit to be used for its ordinary purposes. Defendant's attorney objected to the verdict on the ground that it was inherently inconsistent for the jury to find that the dehumidifier was both defective and fit to be used for its ordinary purposes. Upon questioning the jury to clarify the verdict, the court determined that the inconsis-tency could be resolved by asking the jury to find whether the dehumidifier was fit to be used for its ordinary purposes on the date of the fire, rather than on the date on which it left defendant's control. Defendant's attorney objected to that revised question on the ground that it did not set forth the ap-propriate standard for determining whether there was a breach of implied warranty. The court overruled the objection, and the jury returned a verdict finding that the dehumidifier was not reasonably fit to be used for its ordinary purposes on the date of the fire and that the dehumidifier was a substantial factor in causing the fire. Defendant moved for judgment notwithstand-ing the verdict, contending that the evidence established that the dehumidifier was not defective when it was sold and, alternatively, defendant sought a new trial based on the incon-sistent verdict. The court denied defendant's motion, and this appeal ensued.

Contrary to defendant's contention, the court properly

refused to grant defendant judgment notwithstanding the verdict. Plaintiffs presented testimony with respect to both causes of action that the design of the dehumidifier was defective because it failed to incorporate secondary protection to the overload mechanism. Thus, viewing the evidence in the light most favorable to plaintiffs, we conclude that there is a valid line of reasoning and permissible inferences that could lead rational persons to conclude that the dehumidifier was defective (*see generally Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]; *Cramer v Benedictine Hosp.*, 301 AD2d 924, 928-929 [2003]; *see also* CPLR 4404 [a]). Defendant further contends that plaintiffs failed to prove that the dehumidifier was operating at the time of the fire and that the verdict is therefore against the weight of the evidence with respect to both causes of action, requiring a new trial. Contrary to defendant's contention, plaintiffs did not fail to establish that the dehumidifier was operating at the time of the fire. Although none of plaintiffs' witnesses was able to state conclusively that the dehumidifier was operating at the time the fire started, an examination of burn patterns and other evidence led three of plaintiffs' witnesses to opine that the dehumidifier was the source of the fire. Thus, it cannot be said that the verdict could not have been reached upon any fair interpretation of the evidence (*see Levin v Carbone*, 277 AD2d 951 [2000]).

We agree with defendant, however, that a new trial is required because the initial verdict was inconsistent and the jury's subsequent verdict resulted from the court's erroneous revised question in changing the relevant date of inquiry for the breach of implied warranty cause of action to the date of the fire. We note at the outset that causes of action for strict products liability and breach of implied warranty are not identical because "the negligence-like risk * * * approach [to strict products liability] is foreign to the realm of contract law" approach to breach of implied warranty (*Denny v Ford Motor Co.*, 87 NY2d 248, 262 [1995], *rearg denied* 87 NY2d 969 [1996]). Nonetheless, "[a]s a practical matter, the distinction between the defect concepts in tort law and in implied warranty theory may have little or no effect in most cases," depending on the nature of the proof and the way in which issues of fact were litigated (*id.*). In the instant case, there was no differentiation in the evidence between the concept of defect in terms of strict products liability and that of defect in terms of breach of implied warranty (*see generally Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 106 [1983]). Thus, we conclude that the jury's initial verdict was inconsistent, i.e., it was inconsistent to find that the dehumidifier was defective when it

left defendant's control but that it was reasonably fit to be used for its ordinary purposes at that time. We further conclude that the court erred in attempting to cure the inconsistency by asking the jury to find with respect to the breach of implied warranty cause of action whether the dehumidifier was not reasonably fit to be used for its ordinary purposes on the date of the fire. It is well settled that, "whether [an] action is pleaded in strict products liability, breach of warranty or negligence, it is a consumer's burden to show that a defect in the product was a substantial factor in causing the injury and, of greatest significance here, that the defect complained of existed at the time the product left the manufacturer or entity in the line of distribution being sued" (*Tardella v RJR Nabisco*, 178 AD2d 737, 737 [1991]). Thus, the inconsistency in the verdict remained, and the appropriate remedy is a new trial (*see DePasquale v Morbark Indus.*, 254 AD2d 450 [1998]; *Lundgren v McColgin*, 96 AD2d 706 [1983]; *see also Scarsella v Harjes*, 234 AD2d 874, 876 [1996]). Present—Green, J.P., Hurlbutt, Kehoe, Gorski and Hayes, JJ.