Motta v Eldred Cent. Sch. Dist. (2019 NY Slip Op 03714)





Motta v Eldred Cent. Sch. Dist.


2019 NY Slip Op 03714


Decided on May 9, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 9, 2019

526614

[*1]ANTHONY MOTTA JR., an Infant, by ANTHONY MOTTA SR. et al., His Parents, et al., Respondents,
v
ELDRED CENTRAL SCHOOL DISTRICT, Appellant.

Calendar Date: March 28, 2019

Before: Garry, P.J., Egan Jr., Lynch, Clark and Aarons, JJ.


The Mills Law Firm, LLP, Clifton Park (Christopher K. Mills of counsel), for appellant.
Bergstein & Ullrich, LLP, New Paltz (Stephen Bergstein of counsel) and Rubino Law Firm, Yonkers (JenniElena Rubino of counsel), for respondents.



MEMORANDUM AND ORDER
Egan Jr., J.
Appeals from a judgment and an amended judgment of the Supreme Court (Schick, J.), entered January 16, 2018 and March 27, 2018 in Sullivan County, upon a verdict rendered in favor of plaintiffs.
The facts of this case are familiar to this Court as this matter was the subject of a prior appeal (141 AD3d 819 [2016]). Briefly, on June 10, 2013, plaintiffs served defendant with a notice of claim alleging, among other things, that defendant negligently supervised its students and failed to protect plaintiff Anthony Motta Jr. (hereinafter Motta), a student at Eldred Junior-Senior High School, from bullying by other students. Motta and his parents, plaintiffs Anthony Motta Sr. and Christine Horne, subsequently commenced this action against defendant alleging that Motta sustained physical, mental and emotional injuries due to defendant's negligent supervision of its students and its violation of the Dignity for All Students Act (see Education Law § 10 et seq. [hereinafter DASA]). Following joinder of issue, defendant moved for summary judgment dismissing the complaint, which motion Supreme Court (McGuire, J.) granted. On appeal, this Court reversed, sustaining Supreme Court's finding that DASA does not provide for a private right of action, but finding a triable issue of fact as to whether defendant adequately supervised the students and, if not, whether such negligent supervision was the proximate cause of Motta's injuries (141 AD3d at 820-822).
Defendant thereafter filed a second motion for summary judgment, arguing, among other things, that any claim of negligence occurring on or before March 12, 2013 should be dismissed because more than 90 days had elapsed between Motta's transfer to the Board of Cooperative Educational Services (hereinafter BOCES) and the filing of the notice of claim. In turn, plaintiffs cross-moved to amend the notice of claim. Supreme Court (Schick, J.) denied both motions, finding that the notice of claim was timely. Defendant thereafter filed a motion in limine seeking to preclude, among other things, trial testimony concerning DASA, and plaintiffs [*2]moved in limine to preclude evidence of a prior delinquency proceeding concerning Motta. Supreme Court denied defendant's motion and granted plaintiffs' motion to preclude. Following a jury trial, the jury rendered a verdict in plaintiffs' favor, awarding Motta $300,000 for past pain and suffering and $640,000 for future pain and suffering, and awarding Motta's parents $30,000 each for psychological injury, humiliation and pain and suffering. Defendant subsequently moved to set aside the jury verdict as excessive and for a new trial, which Supreme Court responded to by entering a judgment and an amended judgment in favor of plaintiffs in the full amount awarded by the jury. Defendant now appeals from the judgment and the amended judgment.[FN1]
Supreme Court did not err in denying defendant's motion seeking to dismiss the complaint based upon plaintiffs' alleged failure to timely file a notice of claim. A plaintiff seeking to bring suit against a school district is required to "serve a notice of claim on the school district within 90 days of when the claim arises" (Matter of Kranick v Niskayuna Cent. Sch. Dist., 151 AD3d 1262, 1262 [2017]; see Education Law § 3813 [2]; General Municipal Law § 50-e [1] [a]; Matter of Newcomb v Middle Country Cent. Sch. Dist., 28 NY3d 455, 460 [2016]). The purpose of the notice of claim requirement "is to afford school districts an opportunity to investigate claims and obtain evidence promptly while it is still readily available" (Vine v John Manville Sales Corp., 158 AD2d 842, 843 [1990] [internal quotation marks and citation omitted]; see Matter of McClancy v Plainedge Union Free Sch. Dist., 153 AD3d 1413, 1414 [2017], lv denied 31 NY3d 905 [2018]).
Plaintiffs filed their notice of claim on June 10, 2013, which provided, in relevant part, that the subject claims "began on or about November 14, 2008 when [Motta] was assaulted by another student, followed by a series of bullying events by the same students up to and including the present day." Contrary to defendant's assertion, the fact that Motta began attending BOCES on March 4, 2013 — more than 90 days prior to the filing of the notice of claim — did not end the alleged course of conduct that served as the basis for his complaint, nor was it the final date that such conduct occurred. The record demonstrates that, following Motta's placement in BOCES, he continued to be bussed to Eldred Junior-Senior High School for daily transport to BOCES, he continued to have interaction with the same group of students who continued to verbally taunt and harass him, he continued to report these incidents to school administrators and the school was continuing to take action with regard to his complaints through September 2013. Accordingly, given the continuing nature of the alleged bullying and negligent supervision at issue, and the fact that defendant had actual notice of the claim in time to properly investigate and obtain evidence, we find no error in Supreme Court's determination that the notice of claim was timely (see generally Education Law § 3813 [2]; General Municipal Law § 50-e [1] [a]).
Defendant next contends that Supreme Court erred when it determined that the jury's apportionment of liability on question No. 5 of the verdict sheet was a nullity. The verdict sheet that was provided to the jury at the commencement of deliberations contained a series of eight questions for the jury to consider [FN2]. As relevant here, question No. 3 asked the jury to determine whether plaintiffs were negligent. If the jury answered "[y]es," it was instructed to continue to question No. 4, which asked the jury to determine whether plaintiffs' negligence was "a substantial factor in causing their own injuries." The instructions for question No. 4, in turn, provided that if the jury answered "[y]es," to proceed to question No. 5, and if it answered "[n]o," to proceed to question No. 6. The jury thereafter commenced deliberations.
After the jury had completed its deliberations and returned to the courtroom, Supreme Court instructed the court clerk to take the jury's verdict. The court clerk did so by asking the jury's verdict as to question Nos. 1, 2, 3, 4, 6, 7 and 8. After the clerk finished taking the verdict, Supreme Court discharged the jury. Shortly thereafter, Supreme Court returned to the courtroom and informed the parties that it had discovered "a glitch" in the verdict sheet and asked the foreperson of the jury, who was still in the courthouse, to return to the courtroom. In the presence of the foreperson, Supreme Court revealed that the jury had also answered question No. 5 and apportioned fault between defendant and plaintiffs at, respectively, 70% and 30%. This was despite the instructions for question No. 4, which had instructed the jury that, in the event that it answered "[n]o" (which it did), to proceed to question No. 6. Supreme Court indicated that it considered the answer to question No. 5 a nullity and, after the foreperson was questioned and counsel given the opportunity to be heard, the foreperson was again discharged.
The taking of this verdict was fatally flawed. Pursuant to CPLR 4111 (c), when the answers on a verdict sheet "are inconsistent with each other and one or more is inconsistent with the general verdict, the court shall require the jury to further consider its answers and verdict or it shall order a new trial" (see Marine Midland Bank v Russo Produce Co., 50 NY2d 31, 40 [1980]; Bellinson Law, LLC v Iannucci, 116 AD3d 401, 402-403 [2014], lv dismissed 23 NY3d 1014 [2014]; Vera v Bielomatik Corp., 199 AD2d 132, 133-134 [1993]; Mars Assoc. v New York City Educ. Constr. Fund, 126 AD2d 178, 187 [1987], lv dismissed 70 NY2d 747 [1987]). The jury's consideration of question No. 5 was inconsistent with its answer to question No. 4 and should have been brought to the jury's attention with a curative charge, followed by a return to deliberations to resolve the inconsistency [FN3]. However, because the jury had already been discharged, this was not possible and Supreme Court's consultation with the jury foreperson alone, although done in open court, could not take the place of full jury reconsideration (see Applebee v County of Cayuga, 103 AD3d 1267, 1268-1269 [2013]; Vera v Bielomatik Corp., 199 AD2d at 133-134; Mars Assoc. v New York City Educ. Constr. Fund, 126 AD2d at 190). In essence, the window of opportunity for Supreme Court to fix the problem closed when the other jurors left the courthouse. Supreme Court's subsequent efforts, while well intentioned, were futile and, given this timeline, our only course of action is to order a new trial (see CPLR 4111 [c]; Bellinson Law, LLC v Iannucci, 116 AD3d at 402-403; Applebee v County of Cayuga, 103 AD3d at 1269; Vera v Bielomatik Corp., 199 AD2d at 134).[FN4]
Insofar as a new trial is necessary, we will address Supreme Court's rulings on the parties' competing motions in limine. Supreme Court did not abuse its discretion in granting plaintiffs' motion to preclude defendant from introducing evidence regarding Motta's prior juvenile delinquency proceeding, as its probative value was outweighed by the potential for undue prejudice (see Johnson v Ingalls, 95 AD3d 1398, 1399 [2012]). Moreover, although plaintiffs' DASA cause of action was previously dismissed (141 AD3d at 820), in the context of this action, Supreme Court did not abuse its discretion in denying defendant's motion to preclude evidence regarding DASA, as such evidence remained relevant as to the issue of whether defendant adequately supervised its students (see generally Lasher v Albany Mem. Hosp., 161 AD3d 1326, 1331 [2018]; see also People v Primo, 96 NY2d 351, 355 [2001]). Defendant's remaining contentions are either unpreserved for review or have been rendered academic by our decision.
Garry, P.J., Lynch, Clark and Aarons, JJ., concur.
ORDERED that the appeal from the judgment is dismissed, without costs.
ORDERED that the amended judgment is reversed, on the law, without costs, and matter remitted to the Supreme Court for a new trial.



Footnotes

Footnote 1: Defendant's appeal from the judgment entered January 16, 2018 must be dismissed as it was superseded by the amended judgment (see Matter of Troy Sand & Gravel Co., Inc. v Fleming, 156 AD3d 1295, 1297 n 1 [2017], lv denied 31 NY3d 913 [2018]).

Footnote 2: After each question, instructions were provided as to which question the jury was to consider next. Thus, depending upon the decision of the jury, it might (1) answer only question No. 1, (2) answer an intermediate number of questions, or (3) answer all eight questions.

Footnote 3: The better practice would have been for Supreme Court to ask the foreperson of the jury to hand up the completed verdict sheet to the court for an initial review and then return it to the foreperson. By following this procedure, any obvious errors on the verdict sheet would have been brought to the attention of the court at a time when it could have, after consulting with the parties, taken appropriate corrective action.

Footnote 4: The fact that defendant arguably failed to preserve this issue for review is irrelevant, as defendant was not made aware of the inconsistency prior to the discharge of the jury and, as such, could not have rendered an objection at a time when the issue could have been addressed and rectified by Supreme Court (see Vera v Bielomatik Corp., 199 AD2d at 134; see also CPLR 5501 [a] [3]).